UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| MANUEL BOTELLO, )<br>)<br>     Petitioner, )<br>)<br>v. )<br>)<br>SHIRLEE A. HARRY, )<br>)<br>     Respondent. )<br>_____ ) | Case No. 1:07-cv-341<br><br>Honorable Paul L. Maloney<br><br>**REPORT AND RECOMMENDATION** |

This is a habeas corpus proceeding brought by a paroled state prisoner, through retained counsel, under 28 U.S.C. § 2254.  Petitioner is challenging his plea-based conviction and sentence.  On August 31, 2004, petitioner was sentenced to 192-to-288 months' imprisonment imposed by the Ingham County Circuit Court, after he pled guilty to conspiracy to deliver 1,000 or more grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(i).  The plea was entered pursuant to an agreement requiring the prosecution to dismiss a charge of possession with intent to deliver of 450-to-999 grams of cocaine, as well as dismissal of a Supplemental Information charging petitioner as a fourth habitual felony offender.  The agreement contained a binding provision that petitioner's minimum sentence would be not less than 15 years and not more than 18 years, with the court having discretion to sentence within that range.  After sentencing, petitioner, represented by new counsel, applied for leave to appeal to the Court of Appeals, raising two issues.  Both the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal.  Petitioner initiated this action on April 30, 2007, by filing a *pro se* petition.  Thereafter, counsel appeared on petitioner's behalf and

moved to stay these proceedings for the purpose of exhausting further claims in the state courts. Petitioner's motion was granted, and the matter was stayed for nearly three years, while petitioner pursued state remedies.

By order entered July 29, 2010, the court granted petitioner's motion to reopen the case and to amend his petition. Respondent answered the petition, and petitioner's counsel filed a reply. As clarified by petitioner's counsel, petitioner presents the following four claims for habeas corpus relief:

   I.   A SERIES OF ACTIONS AND OMISSIONS BY PETITIONER MANUEL BOTELLO'S DEFENSE COUNSEL VIOLATED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

   II.  PETITIONER BOTELLO WAS (A) CONVICTED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND (B) WAS DENIED HIS RIGHTS TO CONFRONTATION AND TO PRESENT A DEFENSE WHEN THE TRIAL COURT REFUSED TO PERMIT THE IDENTITY OF THE CONFIDENTIAL INFORMANT TO BE DISCLOSED.

   III. PETITIONER BOTELLO'S SENTENCE WAS IMPOSED CONTRARY TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

   IV.  PETITIONER BOTELLO IS ENTITLED TO HABEAS RELIEF BECAUSE HE WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS DIRECT APPEAL.

(Confirmation of Issues To Be Adjudicated, docket # 52). On November 29, 2011, petitioner was released from prison on parole.

Chief Judge Paul L. Maloney has referred the matter to me for all purposes, including issuance of a report and recommendation for disposition of the petition, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After

review of the state-court record, I conclude that petitioner has not established grounds for habeas corpus relief.  I therefore recommend that the petition be denied.

## **Proposed Findings of Fact**

The state-court prosecution arose from an undercover narcotics investigation by the Michigan State Police Tri-County Metro Narcotics Unit.  On the afternoon of November 29, 2003, officers were conducting undercover operations at 1040 South Pennsylvania, Lansing, Michigan. An undercover officer made arrangements for a drug purchase with petitioner's co-defendant, Jose Celedon.  The officer subsequently met with co-defendant Jose Romero in the parking lot of Laperla Grocery at 1040 South Pennsylvania.  Romero arrived at the scene in a blue 1999 Ford Explorer, driven by petitioner.  The undercover officer purchased just under one kilogram of suspected cocaine from Romero for $23,000.00.  The defendants were arrested, and the substance was later confirmed to be cocaine by the Michigan State Police forensic laboratory.

Petitioner was charged with conspiracy to deliver more than 1,000 grams of cocaine and possession with intent to deliver 450-to-999 grams of cocaine.  The prosecution filed a Supplemental Information charging petitioner with being a fourth habitual felony offender.  As a result of the Supplemental Information, a conviction on either felony charged in the Information could have resulted in a life sentence.  On January 15 and 23, 2004, the state district court conducted a preliminary examination.  (*See* Preliminary Examination Transcript (PE, docket #s 32, 33). Because petitioner (a citizen of Mexico present in the United States illegally) was not fluent in English, he had an interpreter at the preliminary examination.  The interpreter, Lissy Vigoa-Cardet, is from Cuba and interpreted at the preliminary examination as well as all subsequent proceedings.

A.      **Preliminary Examination**

The testimony at the preliminary examination indicated that petitioner, a resident of Chicago, was a major supplier of cocaine and marijuana to customers in the Lansing area.  Officers were led to petitioner by reason of an investigation conducted in November of 2003 by Officer Frank Mobley, a Lansing police officer assigned to the Tri-County Metro Squad.  (PE I, 6).  With the help of an informant, Mobley had purchased a pound of marijuana on November 19 from Jose Celedon.  (*Id.*, 8-10).  During this transaction with Celedon, Mobley discussed purchasing cocaine.  Celedon advised him that he could provide a kilo or half kilo of cocaine.  (*Id.*, 11).  On November 24, 2003, Mobley met Celedon in the parking lot of the Laperla Grocery Store, of which Celedon was part owner, to buy a second pound of marijuana.  On that occasion, a man named Jose Romero delivered the marijuana to the parking lot, for purchase by Mobley.  (*Id.*, 14).  Mobley and Celedon again spoke of a possible cocaine purchase.  (*Id.*, 13).

On November 29, 2003, Officer Mobley spoke to Celedon on the phone concerning the cocaine purchase.  They agreed that Celedon would sell a kilo of cocaine for $23,000.00.  (PE I, 19).  Celedon said that he did not have the cocaine at the time but that "his supplier" would be bringing it.  (*Id.*).  Mobley, accompanied by the informant, went to the Laperla Grocery Store with $23,000.00 in pre-recorded funds.  They were met by Celedon, who said that the cocaine had not yet arrived.  He told the men to come back later.  (*Id.*, 20).  Mobley and the informant returned to the Laperla Grocery Store at approximately 3:00 p.m.  Several minutes later, a blue Ford Explorer pulled into the parking lot.  (*Id.*, 21).  Romero exited the blue Explorer and got into the backseat of Officer Mobley's car.  He produced a package, saying "This is the cocaine."  (*Id.*, 23).  It took the men a few minutes to open the elaborate packaging.  As they attempted to open the package, Romero reached

-4-

into his coat and pulled out a handgun.  (*Id.*, 24).  Celedon then walked from the store to the driver's side of Mobley's vehicle and brought him a cutting instrument to help open the package.  (*Id.*, 25-26).  The officer left the vehicle, ostensibly to get money from the trunk.  He then gave the signal for other officers to arrest Celedon and Romero.  When Celedon saw the police cars moving in, he grabbed the bag of money from Mobley's hand and ran towards the front door of the grocery store. Romero followed.  (*Id.*, 28).  Officers pursued the men into the store, where they recovered both the money and the gun that Romero had thrown on the floor.  (*Id.*, 28-29).

At the time of the cocaine transaction, other officers of the Metro Unit had been assigned to watch the house of Jose Romero on South Holmes in Lansing.  Officer Michael Graham was one of the officers observing the Romero residence.  (PE I, 56-59).  At approximately 2:45 p.m., Graham observed petitioner enter Romero's house.  (*Id.*, 60).  About ten minutes later, petitioner left. (*Id.*, 61-62).  Officers followed petitioner and saw him get into the blue Ford Explorer.  (*Id.*, 64, 75).

Officer Chad Thelan of the Clinton County Sheriff's Department was also conducting surveillance on Romero's house on the afternoon of November 29, 2003.  (PE I, 81-82).  He received a radio transmission from Officer Graham concerning a male subject (later identified as petitioner) who had left the house.  (*Id.*, 88-89).  He began driving and observed a blue Mercury Cougar in which a female subject was sitting in the passenger seat.  (*Id.*, 89-91).  The occupant was later identified as Marzita Garcia de Grijalva, petitioner's girlfriend.  After Romero and Celedon were arrested, a second team of officers intercepted the blue Ford Explorer.  Officer Michael Garrison testified that he was watching the Laperla Grocery Store on the afternoon of November 29, 2003. He observed the cocaine transaction that took place between Officer Mobley and Celedon and Romero from a distance.  (*Id.*, 132-33).  He heard radio traffic concerning a blue Explorer, which

came into his line of sight.  He followed the Explorer, watching it leave the parking lot as the arrests were taking place.  He testified that he believed the occupants were trying to get away.  (*Id.*, 137). Officer Mark Wrigglesworth was assigned to assist in the arrests.  (*Id.*, 144-45).  As he pulled up, he noticed the Ford Explorer leaving the area.  Another officer blocked the vehicle in, and the Explorer then started to back up at over 25 mph.  (*Id.*, 146).  Officers blocked the escape and ordered the driver to get on the ground.  The driver of the blue Explorer was petitioner.  (*Id.*, 146-47).  The Explorer, however, was registered to Mr. Romero. (*Id.*, 147-48).  Officer Thelan testified concerning the stop of the blue Cougar driven by Ms. Garcia de Grijalva.  A consent search of the vehicle uncovered drug records and documents connecting the occupants with a woman named San Juanita Lopez.  Ms. Garcia de Grijalva admitted that petitioner was her boyfriend.  (*Id.*, 164).

The package that Romero delivered to Officer Mobley contained 950 grams of cocaine.  Officers seized additional cocaine from the residence of Jose and Gloria Romero and the residence of San Juanita Lopez and Clarence Bonilla.

The police reports filed in this case by petitioner show that officers interviewed Clarence Bonilla later in the day.  (Supplemental Incident Report, ID#s 135-37).  The police report reflects that Bonilla said his girlfriend San Juanita Lopez had been selling marijuana and cocaine for over two years.  Bonilla identified Lopez's supplier as Jose and Gloria Romero.  Gloria Romero's supplier was petitioner.  Approximately one and a half years earlier, petitioner became upset with Romero and stopped dealing with her.  Thereafter, he sold directly to San Juanita:  "BONILLA advised SAN JUANITA started selling large quantities of marijuana and cocaine for BOTELLO." (ID# 135).  Bonilla told officers that he observed petitioner bringing a large garbage bag containing marijuana to San Juanita's residence one week earlier.  Two weeks earlier, he observed a large

amount of cocaine that petitioner had brought to San Juanita's residence.  "BONILLA advised BOTELLO gave SAN JUANITA the cocaine to sell." (*Id.*).  "BONILLA advised that once a week, normally on Friday or Saturday, BOTELLO and his girlfriend would come from Chicago with the narcotics and would come to collect money." (ID# 136).  Bonilla stated that petitioner would normally bring one large garbage bag filled with marijuana and one large block of cocaine to San Juanita's residence.

San Juanita Lopez testified pursuant to a plea agreement, the details of which were placed on the record before her testimony.  (PE I, 200-05).  Lopez testified that she and her boyfriend, Clarence Bonilla, sold cocaine and marijuana. (PE II, 282).  Her original source of supply was Gloria Romero, but eventually Lopez began to purchase drugs from petitioner and his girlfriend, Ms. Garcia de Grijalva.  (*Id.*, 285-87).  She estimated that she had purchased "a few ounces" of cocaine from petitioner in the months preceding the November 29 delivery.  (*Id.*, 288-89).

On the basis of this and other testimony, the district judge bound petitioner over on charges of conspiracy to deliver 1,000 or more grams of cocaine and delivery of between 450 and 999 grams of cocaine.

### B.       Circuit Court Proceedings

#### 1.       Motion Hearings

On June 17, 2004, petitioner and his co-defendant, Ms. Garcia de Grijalva, appeared before Circuit Judge Paula Manderfield for an evidentiary hearing on several motions.  (*See* Evidentiary Hearing (EH), docket # 34).  Interpreter Lissy Vigoa-Cardet was present to interpret the proceedings for petitioner; the co-defendant had a separate interpreter.  (EH, 3-4).  Counsel for the

co-defendant presented a motion to suppress statements from Ms. Garcia de Grijalva on the ground that they were illegally obtained and a motion to suppress evidence seized from her person.  (EH, 5-8).  The court conducted an evidentiary hearing on both motions.  The prosecution presented the testimony of Officers Chad Thelan and Billie Jo Roach to establish that the blue Cougar driven by co-defendant  Garcia de Grijalva was followed by surveillance officers from the house of Jose Romero to the parking lot of the Laperla Grocery Store, the putative site for the controlled buy of cocaine. Officer Roach testified that she identified the car driven by co-defendant Garcia de Grijalva as involved in "counter surveillance," in that it was seen at the home of the suspect on South Holmes and then showed up at the place where the suspect was supposed to deliver drugs.  (EH, 100-01). After the drug transaction, officers stopped the co-defendant's vehicle and received her consent to search the car.  A search of her purse uncovered suspected drug transaction records.  (*Id.*, 41-42). Officers questioned Garcia de Grijalva, who identified the driver of the blue Ford Explorer, petitioner Manuel Botello, as her boyfriend.  (EH, 110).  Officers then identified petitioner as the Hispanic male that they had seen leaving Romero's South Holmes residence shortly before the drug deal.  (*Id.*, 113-14).  After hearing testimony, the court adjourned the hearing to another day.

The hearing reconvened on June 21, 2004.  (*See* Motion Transcript (MT), docket # 35).  The court first heard argument on the motion of co-defendant Maritz Garcia de Grijalva to compel identification of the confidential informant.  The court agreed to review information concerning the confidential informant *in camera* to determine whether identification would assist the defense. (MT, 11).  The court then heard argument on the co-defendant's motion to suppress her statements and the fruits of an allegedly illegal search.  At the end of argument, the court ruled against the co-defendant and denied both suppression motions.  (MT, 47-50).

The court then heard from petitioner's defense counsel, Gary McEntee, who orally joined the co-defendant's motion for disclosure of the identity of the confidential informant. (MT, 53). Counsel then argued petitioner's motion to quash the bindover, contending that the evidence before the district court was insufficient to establish probable cause. (MT, 56-66). In essence, counsel asked the court to discount entirely the testimony of San Juanita Lopez, who implicated petitioner not only in the 950 gram drug deal, but also in a much larger conspiracy to deliver both marijuana and cocaine from Chicago to the Lansing area. Counsel argued that the witness was lying and was motivated to implicate innocent people, who were "in the wrong place at the wrong time," in order to save herself from a long prison sentence. (MT, 66-68). The assistant prosecutor summarized all the evidence before the district judge, including the fact that $19,000 was found in a hidden compartment in the co-defendant's blue Cougar during an inventory search one week after the arrest. (MT, 73-74).

After reviewing the preliminary examination transcript and the submissions of counsel, the court found probable cause to affirm the bindover of petitioner on a theory of aiding-and-abetting Romero in the delivery of cocaine. (MT, 78-79). The court also found probable cause to support a conspiracy charge, based on the testimony of San Juanita Lopez. (*Id.*).

2.      Guilty Plea

The documents provided by petitioner show that the prosecutor offered a plea deal pursuant to which petitioner would plead guilty to the conspiracy charge, with a minimum sentence of 225 months and a maximum sentence to be established by the court. (Letter from Plaintiff's Counsel, ID# 128-30). Petitioner told his attorney that he did not wish to go to trial, but that he did

not wish to accept the offer either. Counsel's letter, dated July 16, 2004, informed petitioner that his unwillingness to accept the plea offer meant the case would be tried on Monday, July 19, 2004. The letter summarized the results of counsel's investigation and the reasons why petitioner would likely be convicted, including the discovery of his fingerprints on the inside of the package of cocaine. Counsel remarked that petitioner ran the serious risk of incriminating himself if he chose to testify. Counsel informed petitioner that a conviction at trial would subject him to a minimum sentence of between 18-3/4-and-62-1/2 years, because of his status as a fourth felony offender. Furthermore, the prosecution had advised defense counsel that it would be seeking the highest possible minimum sentence of 62-1/2 years and a maximum sentence of life. In light of the strong evidence against petitioner and the severe penalties that he faced, his attorneys recommended that he "accept the plea offer as it stands." (ID# 129).

On the day set for trial, petitioner and his counsel appeared before Judge Paula Manderfield for the entry of a guilty plea. (Plea Transcript (PT), docket # 36). Ms. Vigoa-Cardet was present to interpret the proceedings. (PT, 3-4). Petitioner was put under oath and interrogated by the court. Petitioner indicated that he had enough time to discuss the case with his lawyer and that he had no complaints concerning his attorney's conduct. (*Id.*, 5). The prosecutor advised that petitioner was charged with conspiring with Jose Romero, Marzita Garcia de Grijalva and Jose Celedon to deliver 1,000 or more grams of cocaine. (*Id.*, 6). The prosecutor put the plea agreement on the record. The plea agreement was significantly better than the agreement discussed in counsel's letter, in that the prosecution agreed to a minimum sentence of only 15-to-18 years (as opposed to the 18-3/4-year minimum sentence offered earlier). Furthermore, if the minimum sentence exceeded

18 years, petitioner would have the right to withdraw his plea.[1]   (*Id.*, 9-10).   The Amended Information was read to petitioner, and he testified, through the interpreter, that he understood the charge.  (*Id.*, 13).

The court then conducted the standard plea colloquy to assure that petitioner understood the rights that he was giving up, including the right to a trial.  When asked whether anyone had promised him anything, petitioner stated , "No.  Between 15 and 18 years."  (*Id.*, 16).  The court clarified that that would be the minimum sentence and that the maximum sentence would be determined by the court at sentencing.  Petitioner said that he understood.  (*Id.*, 16).  When asked if he was pleading guilty because he was guilty, petitioner answered, "Yes.  I am guilty."  (*Id.*, 17).

The portion of the plea colloquy devoted to establishing a factual basis for the conspiracy charge featured equivocation by petitioner and impatience and imprecision by both attorneys.  No summary would do it justice, so the relevant parts of the colloquy are set forth verbatim:

> THE COURT:   And what happened that makes you think you're guilty of this offense?
>
> THE INTERPRETER:  A lady told me to, um, go with Mr. Romero, that he was bringing a package to LaPerla.
>
> THE COURT:  Okay.  What else?
>
> THE INTERPRETER:  And he took that package to LaPerla to a person that was in a red car.
>
> THE COURT:  Okay.  And who was in the red car?

---

[1] The prosecutor (p. 9) identified the sentencing agreement as governed by *People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982).  Under *Killebrew*, a sentencing agreement is binding between the parties.  If the court rejects it, the defendant has the right to withdraw the plea and proceed to trial.  *See Leatherman v. Palmer*, 387 F. App'x 533, 534 (6th Cir. 2010).

THE INTERPRETER:  I don't know who it was.

THE COURT:  Okay.

MR. McENTEE [defense counsel]:  May I inquire and assist the Court?

THE COURT:  I'm not done yet.  Do you know what was in the package?

THE INTERPRETER:  Yes.  I know.

THE COURT:  What was in it?

THE INTERPRETER:  Cocaine.

THE COURT:  Okay.  And -- Okay.  Questions, Mr. McEntee?

MR. McENTEE:  Thank you.

THE COURT:  Go ahead.

MR. McENTEE:  Mr. Botello, the package that you described as containing cocaine, was it your belief that that package contained at least one kilogram of cocaine?

THE INTERPRETER:  I didn't know exactly how much it weighed.

MR. McENTEE:  Could it have been at least 1,000 grams?

THE INTERPRETER:  Maybe.

THE COURT:  Was that your understanding, that it contained about approximately 1,000 grams?

THE INTERPRETER:  I think so.

THE COURT:  Okay.  And, um, any questions as to a factual basis, Mr. Crino?

MR. McENTEE:  Could I ask some more, Bill?

MR. CRINO [assistant prosecutor]:  Let me it [sic] state for the record, that it's the People's position at this time we do not have a factual basis for this charge.

-12-

If Mr. McEntee wants to ask further questions before I attempt to ask questions.

THE COURT:  Go ahead.

MR. McENTEE:  It is true, is it not, Mr. Botello, it is true that you assisted Mr. Romero by keeping an eye on what was going on.  Isn't that correct?

THE INTERPRETER:  Yes.  I was watching from far away.

MR. McENTEE:  And it's also true, is it not, that you were helping another person by keeping an eye on this particular deal.  Is that not true?
Were you assisting San Juanita Lopez in any way to help facilitate this transaction?

THE INTERPRETER:  I don't understand very well.

MR. McENTEE:  Were you keeping an eye on Mr. Romero so that the deal --

THE INTERPRETER:  I'm not hearing when you speak.

MR. McENTEE:  Okay.  Would you -- if you would, your Honor, would you ask him if he can hear.

THE INTERPRETER:  Yes.

MR. McENTEE:  Okay.  Mr. Botello, did you assist another person by keeping an eye on Mr. Romero so that the cocaine would be delivered as planned?

THE INTERPRETER:  Yes, I was there.

MR. McENTEE:  We have an agreement.  Do you agree?

MR. BOSTIC [assistant prosecutor]:  The answer was, "Yes, I was there."

MR. CRINO:  Mr. McEntee.

MR. McENTEE:  (Conferring with Mr. Crino.)  Mr. Botello, did you enter into an agreement with Jose Romero?

THE INTERPRETER:  No, I entered an agreement with San Juanita Lopez.

-13-

MR. McENTEE:  Your Honor, I move to amend Count 2 to include the name San Juanita Lopez, and I request that the Prosecution permit us to do that without objection.

MR. BOSTIC:  Your Honor, we do not move, nor do we agree to a defense amendment of our pleading or of our document.  We simply don't have an agreement here.  I think we should come back at 8:30 in the morning.

MR. McENTEE:  I think I need to speak to my client.

THE COURT:  You have had a lot of time to do that, Mr. McEntee.  It's ten to 12.  And, you know, we have a large panel of jurors coming back tomorrow morning, and the instruction earlier was to be ready to plead or do preliminary motions at 11 o'clock this morning.

MR. NEUMAN:  Can I speak to Gary, please?  (Conferring with Mr. Crino and Mr. McEntee.)

MR. McENTEE:  I don't mean to take the Court's time, your Honor, but because we have an interpreter and because her words are being broadcast, I would like the opportunity to speak to my client through the interpreter.  I would like one minute to do that, if it would be all right with the Court because, otherwise, I would normally be able to talk to a client.

THE COURT:  Okay.  Where do you want to do this?

MR. McENTEE:  Right here.

THE COURT:  Okay.  Go ahead.

MR. McENTEE:  Thank you.

(At 11:50 a.m., recessed; reconvened at 11:53 a.m.)

MR. McENTEE:  Your Honor, permission to let Mr. Neuman take over on the factual basis?

THE COURT:  Do you have any objection to that, Mr. Bostic?

MR. BOSTIC:  No, your Honor.

MR. CRINO:  No, objection.

-14-

THE COURT:  Mr. Neuman, do you wish to inquire of your client?  We're going back to the Botello file.

MR. NEUMAN:  Thank you, your Honor.
Mr. Botello, on the day of the incident, did you agree with Mr. Romero that you would drive him to the scene of the -- of the -- where the cocaine was delivered, and you knew that he had the cocaine with him, and it could have been a kilo or more of cocaine?

THE INTERPRETER:  Yes.

MR. NEUMAN:  And the purpose of you driving him there was to make sure that he would get there so that the deal could take place?

THE INTERPRETER:  Yes.  I drove him to LaPerla and left him there.

MR. NEUMAN:  And you knew that a cocaine deal was about to take place when you drove him there.  Is that correct?

THE INTERPRETER:  Yes.

MR. NEUMAN:  That should be it.

THE COURT:  Okay.  Questions, Mr. Crino?

MR. CRINO:  One moment, please, your Honor.

MR. NEUMAN:  Let me just re-ask the question one more time.
On the day of the incident, you drove Mr. Romero to the place where the cocaine was to be delivered.  You knew that there was cocaine, and it could have been a kilo or more, and it was your agreement to drive him there to assist him to make sure that the deal would take place?

THE INTERPRETER:  Yes.

(PT, 17-23).

Both attorneys informed the court that an adequate factual basis had been established

for the plea.  (PT, 23-24).  The court found that the plea was "understanding, voluntary, accurate,

-15-

factually supported, and free from duress or coercion." (*Id.*, 24). On that basis, the court accepted the plea.

Petitioner and counsel appeared for sentencing on August 31, 2004. (Sentencing Transcript (ST), docket # 37). Ms. Lissy Vigoa-Cardet was again present to interpret for petitioner. (ST, 3-4). The parties stipulated to the scoring of the state sentencing guidelines. (*Id.*, 4-5). The guidelines provided for a minimum sentence of 171-to-285 months. (*Id.*, 5). Defense counsel reminded the court of the *Killebrew* plea agreement for a minimum sentence of between 15 years (180 months) and 18 years (216 months). (*Id.*, 8). He asked the court to impose a sentence of not greater than 15 years (180 months) with a maximum of 270 months. Counsel admitted petitioner's involvement in the drug transaction, but indicated that co-defendants were attempting to exaggerate petitioner's culpability. (*Id.*, 9-10). When asked to speak, petitioner said that he only wanted "to ask to this court forgiveness for what I did, and that's it." (*Id.*, 12). The prosecutor asked for a minimum sentence of 216 months, the maximum sentence allowable under the binding plea agreement. (*Id.*, 13-14).

The court imposed a minimum sentence of 192 months, [2] in the middle of the allowable range, and a maximum sentence of 288 months. (*Id.*, 14-15).

## C.     Appellate Proceedings

Petitioner sought and was granted appointment of appellate counsel. Appellate counsel filed a motion to withdraw the guilty plea and for resentencing, which the trial court heard on September 28, 2005. (Transcript, docket # 38). The motion alleged ineffective assistance of

---

[2] Petitioner was released on parole on November 29, 2011, after serving only eight years.

counsel and sought an evidentiary hearing. The motion also raised a challenge to the procedure used

at sentencing, relying on *Blakely v. Washington*, 542 U.S. 296 (2004). After hearing argument, the

court rejected the argument under *Blakely*, relying on a then recent Michigan Supreme Court case

holding that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *People v.*

*Claypool*, 684 N.W.2d 278 (Mich. 2004). The court made factual findings rejecting petitioner's

contention that he did not understand the proceedings as interpreted by Ms. Vigoa-Cardet:

> Now, in regard to the -- in regard to Defendant's issue regarding the
> interpreter and a claim by Defendant that he was not able to communicate fully
> because of the language barrier, the Court would also note that it was the same
> interpreter at all proceedings, and I know that it's my habit to speak very slowly so
> that the interpreter can interpret on the record everything that's said in the courtroom
> to the Defendant. And also, as far as the plea goes, everything was interpreted word
> for word on the record. So the Court doesn't find any merit in that argument.

(Tr., 7-8, docket # 38). Turning to the claim of ineffective assistance of counsel, the court reviewed

the transcript and found that defense counsel's performance was reasonable, that there were no

attorney errors, and that petitioner's plea was voluntary and understanding. (*Id.*, 8-9). The motion

to withdraw the plea was therefore denied.

Appointed counsel then sought leave to appeal in the Michigan Court of Appeals.[3]

The application for leave to appeal raised two claims:

> I.     THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
>        DEFENDANT'S MOTION TO WITHDRAW HIS PLEA WHEN
>        DEFENDANT WAS MISADVISED AS TO THE SENTENCE HE WAS
>        GOING TO RECEIVE AND THE INTERPRETER MISCOMMUNICATED
>        THE PLEA/SENTENCING AGREEMENT.
>
> II.    DEFENDANT IS ENTITLED TO RESENTENCING WHEN THE
>        STATUTORY SENTENCING GUIDELINES WERE MISSCORED AS TO

---

[3] Under Michigan law, a defendant who pleads guilty does not have a right to appeal, but may
seek leave to appeal. *See* MICH. CONST. 1963, art. I § 20; MICH. COMP. LAWS 600.308(2)(d).

OFFENSE VARIABLE 15, WHICH AFFECTED THE SENTENCING GUIDELINE RANGE.

(Defendant-Appellant's Brief in Support of Delayed Application for Leave to Appeal, found in Michigan Court of Appeals record, Case No. 266187, docket # 39). A panel of the Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." (Order, 12/1/2005). Petitioner, represented by another attorney, filed a motion for rehearing, raising a new claim of error arising from the failure to identify the confidential informant at the preliminary examination as well as repeating the claims previously rejected by the appellate panel. By order entered January 20, 2006, the appellate court denied the motion for rehearing.

On January 25, 2006, appellate counsel filed an application in the Michigan Supreme Court for leave to appeal. The application raised the two appellate claims asserted in the Court of Appeals as well as the following three claims:

III.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT RULED THAT THE CONFIDENTIAL INFORMANT DID NOT HAVE TO BE DISCLOSED OR TESTIFY.

IV.    THAT HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS WELL AS AT THE APPELLANT [SIC] LEVEL.

V.    THAT THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE OF CONSPIRACY TO DELIVER COCAINE AND DEFENDANT HAS BEEN DENIED DUE PROCESS OF LAW IN VIOLATION OF THE U.S. CONSTITUTION, AMENDMENT XIV AND THE MICHIGAN CONSTITUTION, ARTICLE 1, SECTION 17.

(Application for Leave to Appeal, found in Michigan Court of Appeals record, Case No. 130386, docket # 40).

While the application was pending in the Michigan Supreme Court, petitioner wrote to his trial attorneys, accusing them of ineffective assistance and of not representing him properly

-18-

in the trial court.  Petitioner has provided the court with counsel's response, contained in a letter dated February 9, 2006.  (ID#s 131-34).  In that letter, counsel made the following statements relevant to petitioner's present claims:

- The Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004), did not apply to petitioner's preliminary examination, because no out-of-court statement by a confidential informant was introduced at the preliminary examination.

- During the entire period of counsel's representation of petitioner, petitioner asserted his innocence, saying that he was "simply driving Romero's vehicle."  (ID# 132).  Fingerprint evidence disclosed late in the case, however, showed that petitioner's fingerprints were on the inside of the cocaine package and that, therefore, he had wrapped it.  Consequently, if the case had been tried, petitioner could not have testified, as truthful testimony would have incriminated him and false testimony would have been brought to the attention of the trial judge.

- The conspiracy charge against petitioner was based on the testimony of the Lopezes that petitioner was "their supplier on numerous occasions."  (ID# 132).  Nine hundred fifty grams of cocaine were retrieved at the Laperla parking lot in addition to a quantity of cocaine discovered at the Lopez residence.  "These facts were sufficient to support a bind-over on a charge of conspiracy to deliver over 1,000 grams of a mixture containing cocaine."  (*Id.*).  The strategy adopted by counsel in connection with the motion to

-19-

quash the bindover (that Mrs. Lopez was a liar and was merely trying to reduce her own culpability) was no longer viable after the discovery of petitioner's fingerprints on the inner package wrappings. The fingerprint identification was verified by an independent expert witness retained by defense counsel. "At that point in the proceedings, both Mr. Neuman and I recognized that your defense of being an unfortunate person in the wrong place at the wrong time would likely be overwhelmed by physical, as well as testimonial and circumstantial, evidence against you." (*Id.*).

- Counsel had thoroughly investigated all of the allegedly exculpatory evidence related to him by petitioner, without success. "I diligently followed up on all of the information you provided to me, but, unfortunately, nothing helpful to your case developed. To the contrary, what information I did obtain proved, in my opinion, to be harmful to your case." (ID# 133).

- Petitioner's assertion of innocence after the entry of his plea was "somewhat disingenuous," in view of the fact that "from the very beginning of your case, you did not provide truthful information to your attorneys." (ID#s 133-34).

- A conviction at trial would likely have generated a sentence up to four times the minimum sentence petitioner actually received as a result of the plea negotiated by counsel. (ID# 134).

Petitioner's application for leave to appeal pended before the Michigan Supreme Court for approximately four months. By standard order entered May 30, 2006, the court denied leave to appeal. One justice voted to hold the case in abeyance on the sentencing issue, in

-20-

anticipation of a definitive answer in a then-pending Supreme Court appeal. (*See* Supreme Court Record, Case No. 130386, docket # 40).

### D.    Post-Conviction Proceedings

Petitioner initiated this action on April 30, 2007, by filing a *pro se* petition. The petition raised four claims for relief. Before the petition was served on the Michigan Attorney General, counsel appeared for petitioner and requested a stay of proceedings so that further claims could be exhausted in the state courts. The court granted petitioner's motion for a stay of proceedings by order entered October 2, 2007. Petitioner returned to the trial court and filed a motion for relief from judgment pursuant to Mich. Ct. R. 6.500, raising the following claims:

I.    DEFENDANTS ARE ENTITLED TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT PLEA TAKING AND SENTENCING. COUNSEL FAILED TO EXPLAIN THE NATURE OF THE CHARGES AND DISCUSS POSSIBLE DEFENSES TO THE CONSPIRACY CHARGE. DEFENDANT BOTELLO WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

II.    DEFENDANT BOTELLO WAS (A) CONVICTED ON INSUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND (B) WAS DENIED HIS RIGHTS TO THE CONFRONTATION AND TO PRESENT A DEFENSE WHEN THE TRIAL COURT REFUSED TO PERMIT THE IDENTITY OF THE CONFIDENTIAL INFORMANT TO BE DISCLOSED.

III.    DEFENDANT WAS DENIED HIS RIGHT TO COUNSEL WHEN HIS PLEA ATTORNEY FAILED TO INFORM AND/OR EXPLAIN TO HIM THAT BY PLEADING GUILTY HE WOULD BE SUBJECT TO AUTOMATIC DEPORTATION. THAT FAILURE WARRANTS SETTING ASIDE THE PLEA CONVICTION.

IV.    DEFENDANT IS ENTITLED TO RELIEF BECAUSE HE WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS DIRECT APPEAL.

On November 21, 2008, Circuit Judge Paula Manderfield (the same judge who took petitioner's guilty plea and sentenced him) issued a four-page opinion and order denying post-judgment relief.  (*See* Order, docket # 25-1, ID#s 408-11).  The trial court rejected petitioner's contention that he did not understand the nature of the charge or proceedings because of the language barrier, making the following factual findings:

> The facts indicate that Defendant had an interpreter who served throughout the entire court proceedings.  There was an extensive preliminary examination that was done with the same interpreter, and Defendant did not express any difficulties understanding or communicating with his interpreter.  Defendant includes an Affidavit in support of the claim of language interpretation difficulties because of the varying dialects of Spanish.  However, this Affidavit is speculative.  The Affidavit indicated that Defendant "could have misunderstood the interpretations."  The Affidavit doesn't definitively state that Defendant misunderstood his interpreter.  Therefore, Defendant's language difficulties did not preclude him from entering a knowing, voluntary and intelligent plea.

(*Id.*, ID# 410).   The court rejected petitioner's claim of ineffective assistance of counsel at sentencing, pointing out that petitioner could not possibly have been prejudiced, as petitioner had been sentenced pursuant to a binding plea agreement and the sentence was within the agreed-upon range.  The court also found that petitioner had not shown any substantial facts "that would indicate that he has a valid ineffective assistance of counsel claim and but for counsel's error he would not have pled guilty."  (*Id.*, ID#s 410-11).  Finally, the court rejected petitioner's claim of ineffective assistance of appellate counsel, finding that petitioner was not prejudiced by counsel's failure to raise certain issues on appeal.  (*Id.*, ID# 411).

Petitioner's counsel applied for leave to appeal to the Michigan Court of Appeals. By order entered December 15, 2009, the court denied leave to appeal, "because defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)."  (Order, Court of

Appeals Record, Case No. 294497, docket # 41).   Counsel applied for leave to appeal to the Michigan Supreme Court, which denied leave by standard order entered June 28, 2010.   (*See* Michigan Supreme Court Record, Case No. 140521, docket # 42).

Petitioner's counsel returned to this court and filed an amended petition.   At the court's request, counsel set forth an exclusive statement of petitioner's claims, which are set forth in their entirety on page 2 of this report and recommendation.   (*See* Confirmation of Issues To Be Adjudicated, docket # 52).

## Applicable Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).   *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.   *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Williams v.*

-23-

*Taylor*, 529 U.S. 362, 412 (2000). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *White*, 134 S. Ct. at 1702 n.2. "[C]learly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). "In *Greene*, the Court clarified that state courts must follow clearly established law as it existed 'at the time of the state-court adjudication on the merits.'" *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014). "That is, under 28 U.S.C. § 2254(d), 'clearly established Federal law' is the law at the time the original decision was made, not as [the Sixth Circuit had previously held], the law 'before the conviction became final.'"[4] *Miller*, 642 F.3d at 644 (quoting *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s

___

[4] The "finality" cutoff under *Teague v. Lane*, 489 U.S. 288 (1989), is an inquiry "distinct" from the temporal component of clearly established federal law under AEDPA. *See Greene*, 132 S. Ct. at 44; *see also Miller*, 642 F.3d at 644-45.

-24-

unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Burt*, 134 S. Ct. at 15; *O'Neal v. Bagley*, 743 F.3d 1010, 1020-21 (6th Cir. 2013). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *O'Neal*, 743 F.3d at 1020-21; *Treesh v. Bagley*, 612 F.3d 424, 431 n.2 (6th Cir. 2010).

## Discussion

### I.    Ineffective Assistance of Counsel

#### A.    Standards

Petitioner's first constellation of habeas corpus claims challenges his guilty plea, contending that it was induced by ineffective assistance of counsel. The Supreme Court has clearly established that a guilty plea may be rendered involuntary if it was induced by ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). Under *Hill*, the two-part standard for evaluating claims of ineffective assistance of counsel, first established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that a defendant's plea of guilty was induced by ineffective assistance of counsel. Under this two-part test, the criminal defendant

must first show that counsel's performance fell below an objective standard of reasonableness. *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687-88). The defendant must next show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In the context of a guilty plea, a petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59. Where a petition does not allege facts showing this kind of prejudice, the petition is subject to summary dismissal. *Id.* at 60; *see generally Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012).

Petitioner's counsel presented his claims of ineffective assistance of counsel to the state circuit court in a motion for relief from judgment. Judge Manderfield, who had presided over the guilty plea and sentencing, denied relief on the merits by opinion entered November 21, 2008. The opinion addressed each claim on the merits and did not rely on any procedural default. Both the Michigan Court of Appeals and Supreme Court denied discretionary review, finding that petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (*See* docket #s 41, 42). Where the appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094-96 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). Petitioner has presented no evidence or argument rebutting this presumption.

Because the state courts decided petitioner's claims of ineffective assistance of counsel on their merits, their decisions must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 131 S. Ct. at 784. To receive habeas

-26-

relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012).  This creates a "high burden" for petitioner.  *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (2013).  "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).  The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 131 S. Ct. 733, 740 (2011); *see Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013).

> B.  <u>Sixth Amendment Claims</u>
>
> 1.  Failure to Explain Nature of Charges and Possible Defenses

Petitioner's first claim is that counsel failed to explain the nature of the conspiracy charge and to inform him that the prosecution was required to prove that petitioner had the specific intent to deliver the statutory minimum amount charged, 1,000 or more grams of cocaine.  Petitioner points to the Michigan Supreme Court case of *People v. Mass*, 628 N.W.2d 540 (Mich. 2001), which

established that conspiracy is a specific intent crime and that the defendant's intent must have been to possess with intent to deliver the quantity prescribed by the statute. 628 N.W.2d at 629-30. I assume for purposes of this case that an attorney is constitutionally ineffective if he fails to explain to his client the elements necessary for the government to secure a conviction and allows his client to plead guilty in ignorance. *See Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005) (where defendant pleads guilty to a crime without being informed of its elements, plea is invalid).

    Petitioner's evidence in support of this claim, both in this court and in the state courts, consists of two items: (1) petitioner's own affidavit (docket # 25-5, ID#s 415-17), and (2) the transcript of the guilty plea. The affidavit asserts that petitioner did not know at the time of his guilty plea that conviction required the prosecution to show that petitioner had a "complete understanding of what amount of cocaine was being transported and to be sold." (Aff. ¶ 7). As the cocaine delivered at the Laperla grocery store was only 950 grams, petitioner asserts that his plea was involuntary. He asserts that if he had been told that the prosecution was required to prove his knowledge of 1,000 grams, "I would not have pled guilty and would have gone to trial and told the jury . . . that I did not know how much cocaine was in the bag but it could have been a lot." (Aff. ¶ 15). The transcript of the guilty plea proceeding, as related in the proposed findings of fact, features a good deal of equivocation by petitioner concerning a number of things, including the weight of cocaine delivered at the Laperla grocery store. Petitioner admitted that he knew the package contained cocaine, but first said that he did not know "exactly how much it weighed." (PT, 17). Neither the affidavit nor the transcript, however, indicates that petitioner's counsel failed to explain the elements of the offense to him. The affidavit, submitted three years after the plea, barely

mentions petitioner's counsel at all.  When faced with this insubstantial evidence, both the state circuit court and the appellate courts rejected petitioner's claim on its merits.

In deciding this issue, the court is limited to review of the evidence presented to the state courts, which rejected petitioner's claims on their merits.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  As noted, the state court record is virtually devoid of any evidence of the advice given to petitioner by his counsel.  Rather, petitioner asks the court to infer a lack of proper advice[5] on the basis of petitioner's real or feigned expressions of confusion occurring during the establishment of a factual basis for the plea during the plea-taking process.  A review of the plea transcript as a whole, however, undermines the proposed inference.  Early in the plea proceeding, the assistant prosecutor read the Information, which charged petitioner with unlawfully combining and agreeing with other persons to deliver 1,000 or more grams of a mixture containing cocaine. (PT, 12).  Addressing petitioner directly, the court repeated, "You're pleading guilty to count 2 and the amended information, which is a felony charge of conspiracy to deliver the controlled substance of cocaine in an amount of 1,000 or more grams."  (*Id.*, 13).  The court asked petitioner whether he understood, to which he answered, "Yes, I understand."  It was only when the court began to question petitioner to establish a factual basis that petitioner began to equivocate.  Although he admitted delivering cocaine, he said at first that he did not know exactly how much it weighed.  (*Id.*, 18).  When defense counsel asked whether it could have been at least 1,000 grams, he answered, "Maybe."  After a recess to confer with counsel, the following occurred:

---

[5] The Supreme Court recently reemphasized that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden to show that counsel's performance was deficient rests "squarely on the defendant."  *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013).  It is error to assume that counsel was ineffective "where the record [is] silent."  *Id.* at 13.

MR. NEUMAN:  Thank you, your Honor.

Mr. Botello, on the day of the incident, did you agree with Mr. Romero that you would drive him to the scene of the - of the - where the cocaine was delivered, and you knew that he had the cocaine with him, and it could have been a kilo or more of cocaine?

THE INTERPRETER:  Yes.

MR. NEUMAN:  And the purpose of you driving him there was to make sure that he would get there so that the deal could take place?

THE INTERPRETER:  Yes.  I drove im to LaPerla and left him there.

MR. NEUMAN:  And you knew that a cocaine deal was about to take place when you drove him there.  Is that correct?

THE INTERPRETER:  Yes.

MR. NEUMAN:  That should be it.

THE COURT:  Okay.
Questions, Mr. Crino?

MR. CRINO:  One moment, please, your Honor.

MR. NEUMAN:  Let me just re-ask the question one more time.

On the day of the incident, you drove Mr. Romero to the place where the cocaine was to be delivered.  You knew that there was cocaine, and it could have been a kilo or more, and it was your agreement to drive him there to assist him to make sure that the deal would take place?

THE INTERPRETER:  Yes.

(PT, 22-23).

Under well settled habeas corpus law, the court will presume that a criminal defendant has been adequately informed by his counsel of the charge to which he pleaded guilty, even when the record is devoid of an explanation of the charge by the judge.  *See Burt*, 134 S. Ct. at 17; *Bradshaw*, 545 U.S. at 183; *Berry v. Mintzes*, 726 F.2d 1142, 1146-47 (6th Cir. 1984).  Where,

-30-

as here, the plea transcript affirmatively shows that the petitioner was accurately informed of the nature of the charge, an even stronger presumption of regularity attaches to the state-court judgment. *See Parke v. Raley*, 506 U.S. 20, 29 (1992). A satisfactory state-court transcript, containing findings of fact after a proper plea colloquy, places a heavy burden on a petitioner to overturn the contemporaneous findings made by the judge taking the guilty plea. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). In the present case, both the trial judge and the attorneys explained the nature of the offense to petitioner, and petitioner admitted under oath that he knew he was assisting others in delivering a kilo or more of cocaine. (PT, 22-23). The trial court made contemporaneous findings that the plea was understanding, voluntary and accurate. (*Id.*). These findings are entitled to a presumption of correctness, and petitioner bears a "heavy burden" to overcome his plea. *Spikes v. Mackie*, 541 F. App'x 637, 645 (6th Cir. 2013)

Petitioner's proofs fall far short of meeting this substantial burden. His affidavit, filed years after the plea hearing, does not state or imply that counsel failed to explain the elements of the conspiracy offense. Instead, petitioner creates the false impression that the conspiracy charge was based solely on the Laperla delivery, which involved slightly less than 1,000 grams of cocaine. As the state court record makes clear, petitioner was charged with two offenses: delivery of cocaine between 450 and 990 grams, and conspiracy to deliver over 1,000 grams. The first charge was based on the Laperla delivery. The more serious conspiracy charge was based on the testimony of petitioner's accomplice, presented at the preliminary examination, that petitioner was her long-time supplier of cocaine. The delivery charge was dismissed pursuant to the plea agreement. The

conspiracy charge, which included the 950 grams delivered at Laperla as well as substantial quantities delivered before that transaction, was the charge to which petitioner pleaded guilty.[6]

The state trial judge rejected petitioner's Sixth Amendment claim on its merits, as did the state appellate courts. On habeas review, the issue is whether the decision of the state courts was objectively unreasonable. *Bell*, 535 U.S. at 699. The weak and equivocal affidavit submitted in support of petitioner's claim did nothing to undermine counsel's advice and, in fact, barely mentions counsel at all. The guilty plea transcript affirmatively shows that petitioner was informed of the nature of the offense more than once, with specific reference to 1,000 grams of cocaine. In these circumstances, the state courts reasonably rejected petitioner's claim that he was not advised by counsel of the prosecution's burden to prove his knowledge of the quantity involved.

In support of the second prong of the *Hill* analysis, petitioner's affidavit asserts in conclusory fashion that he would not have pled guilty but would have insisted on going to trial, so that he could tell the jury he did not know how much cocaine was in the package. (Aff., ¶ 15, ID# 417). In the context of this case, that claim is preposterous. Had petitioner insisted on a trial, he would have been tried on *both* delivery of 450 to 950 grams of cocaine (the Laperla delivery) *and* the broader conspiracy charge. Had he testified in the way he now claims he wanted to, he would have guaranteed a conviction on the delivery charge. For a charge of delivery of cocaine, the prosecution must prove the amount of controlled substances, but the defendant's knowledge of the

---

[6] Petitioner makes much of his equivocation at the plea hearing. Any judge experienced in taking guilty pleas knows that defendants often minimize their behavior, equivocate, and feign confusion when asked to establish a factual basis for the plea. If signs of confusion at the guilty plea hearing were sufficient to undermine guilty pleas, few would survive. It is often necessary for defense counsel to confer with clients in this situation. The important thing is that after the conference, petitioner dropped his equivocation and answered, under oath, that he was involved with more than 1,000 kilograms of cocaine. *See Spikes v. Mackie*, 541 F. App'x at 646-47.

amount is *not* an element.  *People v. Mass*, 628 N.W.2d at 548.[7]  Petitioner would therefore have

certainly been convicted of the delivery charge.  It mattered little which charge petitioner was

convicted of, as he would have faced a life sentence as a habitual felony offender for either

conviction.  Petitioner's present contention that he would have insisted on a trial just so he could

incriminate himself on a serious drug felony, without the aid of any plea agreement, is unworthy of

belief and was reasonably rejected by the state courts.

Petitioner has not raised even an arguable claim of attorney ineffectiveness.  His

factual submissions did not impeach counsel's effectiveness in the least, and his allegation of

prejudice is far-fetched.  A habeas court may grant relief only if the state court's application of *Hill*

and *Strickland* was "objectively unreasonable."  *Bell*, 535 U.S. at 699.  The state courts' rejection

of petitioner's attack on his guilty plea must be sustained under this standard.

2.      Counsel's Failure to Insure Adequate Communication

Petitioner's second Sixth Amendment claim is that his attorney failed to insure

adequate communication with his client.  Petitioner's counsel asserts that "Mr. Botello was denied

his right to the effective assistance of counsel because of his language difficulties, difficulties not

cured by the appointment of an interpreter."  (Brief at 20, docket # 25).  The trial court rejected this

claim on its merits, finding that petitioner was afforded the services of an interpreter at all

proceedings before the court, including a lengthy preliminary examination, and that he "did not

express any difficulties understanding or communicating with his interpreter."  The only evidentiary

---

[7] The *Mass* decision contrasted the charge of delivery, a general-intent crime, with that of conspiracy, a specific-intent crime.  Although knowledge of generally is an element of the offense for conspiracy, it is not an element of delivery.  628 N.W.2d at 546-48.

support presented in the trial court for this Sixth Amendment claim was a one-sentence letter (docket # 25-4) from Wendy Guerrero-Rivera, an interpreter of Spanish, who opined that the Spanish language has many different variations, "depending on the country." Ms. Guerrero-Rivera indicated that petitioner "could have misunderstood" his interpreter, who was from Cuba, as petitioner is from Mexico. (ID# 414). Judge Manderfield rejected this speculative contention, remarking that Guerrero-Rivera did not definitively state that petitioner misunderstood the interpreter but only said that he might have. (Op. at 3, docket # 25-1, ID# 410).

The state court's findings easily withstand scrutiny under the deferential standard required by AEDPA. As with the previous Sixth Amendment claim, petitioner's proofs in the trial court said nothing about counsel's performance but only speculated that petitioner might not have understood the interpreter. Conspicuously lacking in any of petitioner's proofs (whether his own affidavit or the unsworn opinion from the interpreter) was a statement that petitioner ever complained to his counsel concerning the quality of the interpretation or that counsel had any other knowledge that petitioner did not understand the proceedings. Thus, even crediting the speculation that petitioner might have misunderstood the interpreter, it is impossible to conclude that counsel was in any way ineffective for failing to discern this.

A state-court judgment based on a guilty plea may not be evaded by mere speculation that the habeas corpus petitioner suffered from a language barrier. The Sixth Circuit has squarely held that the appointment of an interpreter for a defendant who does not speak English is sufficient evidence to conclude that the petitioner understood the nature of the charges against him. *Garcia v. Johnson*, 991 F.2d 324, 327 (6th Cir. 1991). As the trial judge noted, the record is devoid of any indication, whether at the preliminary examination, the evidentiary hearings, or the guilty-plea

-34-

proceeding, that petitioner was having difficulty understanding Ms. Vigoa-Cardet because she spoke a Cuban dialect of Spanish. Under *Garcia*, the appointment of an interpreter suffices, in the absence of any evidence that the criminal defendant and the interpreter did not understand each other. The state court's rejection of petitioner's contention that his lawyer was ineffective for failure to insure adequate communication easily withstands scrutiny under the deferential AEDPA standard.

### 3. Ineffective Assistance at Sentencing

Petitioner's next Sixth Amendment claim is that his counsel was ineffective at sentencing. Petitioner complains that he was scored adverse points for a crime involving more than 1,000 grams of cocaine and was given adverse points for being a leader, when there was no evidence at the plea-taking or in statements made by petitioner himself to substantiate these sentencing variables. (Brief at 21-22, docket # 25). The state trial court rejected this claim of ineffective assistance of counsel in its written opinion issued on November 21, 2008, noting that petitioner was sentenced pursuant to a binding plea agreement that established a sentencing range independent of the guidelines. Therefore, "objecting to the scoring would not have made a difference in sentencing." (Op., docket # 25-1, ID# 410).

The trial court's finding is easily sustained under the AEDPA standard, as it is correct. Before the discretionary state guidelines were definitively scored, the parties agreed that the minimum sentence would be no less than 180 months and no more than 216 months. (PT, 9-10, docket # 36). The plea agreement was made pursuant to *People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982), and therefore was binding on the court. Petitioner would have had the absolute right to withdraw his plea had the court deviated from the agreed-upon sentence. At the time of

sentencing, the court imposed sentence within the agreed-upon range.  As the sentencing judge herself found that objecting to the scoring of the guidelines would not have made a difference in sentencing, it is impossible for petitioner to show either substandard attorney performance or prejudice.

Furthermore, petitioner's contention is based on the inarguable proposition that a trial court is limited to the defendant's own admissions in making factual determinations affecting sentencing.  Michigan law is completely to the contrary.  Sentencing under Michigan law remains a matter of trial court discretion.  *See People v. Herron*, No. 309320, ___ N.W.2d ___, 2013 WL 6508495, at * 5-6 (Mich. Ct. App. Dec. 12, 2013).  In determining facts relevant to sentencing, the court may turn to any reliable source.  *See People v. Waclawski*, 780 N.W.2d 321, 358 (Mich. Ct. App. 2009); *People v. Albert*, 523 N.W.2d 825, 826 (Mich. Ct. App. 1994).  No principle of either state or federal law supports petitioner's contention that the trial court could rely only on quantities admitted by petitioner himself.  In the present case, petitioner's fingerprints on the cocaine package tied him to the 950 grams delivered at the Laperla grocery store.  Furthermore, his co-conspirator San Juanita Lopez testified that petitioner had sold her "a few ounces" of cocaine in the six months prior to November 2003.  (PE, 288-89).  The record therefore easily established 1,000 grams.  And both Lopez and her boyfriend Clarence Bonilla identified petitioner and his girlfriend as their source for cocaine and marijuana, supporting a finding that petitioner was a leader in the conspiracy.

Petitioner's counsel procured for him an extremely favorable plea agreement, which contained a binding sentencing recommendation and the dismissal of the Supplemental Information charging petitioner as a fourth-time felony offender.  Given that petitioner was caught red-handed with 950 grams of cocaine, in a package containing his fingerprints, a conviction on the delivery

charge was a virtual certainty and a much longer prison sentence was likely. Petitioner's challenge to the effectiveness of counsel at sentencing is insubstantial and was reasonably rejected by the state courts.

4.      Failure to Inform Petitioner of Immigration Consequences

Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), petitioner faults trial counsel for allegedly failing to explain to him the immigration consequences of his guilty plea. (Brief at 22-23, docket # 25). Petitioner's claim is foreclosed by *Chaidez v. United States*, 133 S. Ct. 1103 (2013). In *Chaidez*, the Court held that the rule of *Padilla v. Kentucky* is a new rule and does not apply retroactively to convictions that became final before *Padilla* was decided. Petitioner's conviction became final on May 30, 2006, when the Michigan Supreme Court denied leave to appeal on direct review. The *Padilla* case was decided in the year 2010 and cannot be applied retroactively.

## II.      Due Process and Confrontation Clause

### A.      Lack of a Factual Basis for Plea

Petitioner's next two claims purport to arise under the Due Process and Confrontation Clauses. Petitioner argues that his plea violated due process, because there was no evidence at the guilty-plea proceeding that petitioner was in fact involved with more than 1,000 kilograms of cocaine. (Brief at 25-26, docket # 25). This claim falters on the first step of analysis under AEDPA -- it is not founded on clearly established holdings of the Supreme Court. The test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The only constitutional challenge that a habeas court

may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *See Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). The Supreme Court has never held that the federal Constitution requires that the state court establish a factual basis for a guilty plea before accepting it. As long as the plea is voluntary and intelligent, the federal Constitution is satisfied. *See Alford*, 400 U.S. at 37-38. The requirement that a factual basis be established for a plea is a creature of state law, not the federal Constitution. *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (*en banc*) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).

Thus, petitioner can point to no Supreme Court holding that the Constitution requires a state judge to establish a factual basis for a guilty plea. Petitioner cites *Jackson v. Virginia*, 443 U.S. 307 (1979), which establishes the standard for habeas review of the sufficiency of the evidence to support a guilty *verdict*. It is clear that the *Jackson* standard has no application to plea-based convictions. As the Fifth Circuit explained almost thirty years ago:

> State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed. We have explicitly started: No federal constitutional issue is raised by the failure of the Texas state court to require evidence of guilt corroborating a voluntary plea. The *Jackson v. Virginia* mandate that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt is inapplicable to convictions based on a guilty plea.

*Smith v. McCotter*, 786 F.2d 697, 702-03 (5th Cir. 1986) (citations omitted).  Petitioner's challenge to the factual basis of his guilty plea is unsupported by any holding of the United States Supreme Court and therefore fails at the first step of analysis under AEDPA.

        B.     <u>Confrontation Clause</u>

        Petitioner presents an incoherent claim under the Confrontation Clause, as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004).  Petitioner points to the trial court's denial of a motion to compel the prosecution to identify the confidential informant who led officers to focus on Jose Celedon.  Ignoring the fact that the statements of the confidential informant were never introduced into evidence, petitioner argues that the Confrontation Clause was somehow violated because "defendant was unable to bring to force the evidence of one who had been involved in numerous prior transactions with the co-defendants."  (Brief at 26-27, docket # 25).  Counsel argues that this "potential testimony" could have raised a reasonable doubt in the minds of the jurors.  (*Id.* at 27).  Obviously, petitioner has failed to state any claim under the Confrontation Clause, which requires only that a criminal defendant be allowed to confront and cross-examine the witnesses against him.  U.S. CONST. amend. VI.  The Confrontation Clause, as interpreted by *Crawford*, is offended when the prosecution introduces an out-of-court, testimonial statement of a person who is not subject to cross-examination.  The Confrontation Clause does *not* require the prosecution to call every witness competent to testify, including informers.  *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).  "If the evidence upon which Defendant was convicted was secured personally by government agents who testified, the government is not required to produce the cooperating individual."  *Id.*  In the present case, no out-of-court statement of any confidential informant was

introduced at the preliminary examination.  As no trial was held, there could not possibly be a
Confrontation Clause claim arising from trial.  Petitioner's voluntary guilty plea waived his right to
a trial and therefore his rights under the Confrontation Clause.  *Boykin*, 395 U.S. at 243.  Petitioner's
invocation of the Confrontation Clause is utterly frivolous and was rightly rejected by the state
courts.

The prosecution's obligation to identify non-testifying confidential informants is not
governed by the Confrontation Clause, but by due-process principles first enunciated in *Roviaro v.
United States*, 353 U.S. 53 (1957).  Under *Roviaro*, the government must disclose an informant's
identity if the informant is a material witness or the informant's testimony is crucial to the defense.
*See Roviaro*, 353 U.S. at 64-65.  Petitioner did not meet this standard in the state courts and he
cannot meet it on habeas corpus review.  The information given by the confidential informant did
not lead officers, directly or indirectly, to suspect petitioner.  Rather, the officers only learned of
petitioner's existence when he showed up in the vehicle to deliver cocaine to the officers' primary
suspect.  A mere tipster is not a material witness whose identity must be disclosed.  *See Bergholz v.
McMackin*, No. 89-3740, 1990 WL 223036, at * 7 (6th Cir. Dec. 27, 1990); *Simpson v. Kreiger*, 565
F.2d 390, 391-92 (6th Cir. 1977); *see also Carpenter v. Lock*, 257 F.3d 775, 779-80 (8th Cir. 2001);
*United States v. Wilburn*, 581 F.3d 618, 623 (7th Cir. 2009); *United States v. Ibarra*, 493 F.3d 526,
532 (5th Cir. 2007) (no disclosure required of informant's identity where informant was a mere
tipster, not involved in defendant's arrest, and not material to the defense).

Here, the confidential informant was uninvolved with petitioner, was not called as
a witness, and provided no information against him.  After an *in camera* review of the informant's
role, as contemplated by the *Roviaro* line of cases, the trial judge declined to order identification of

the informant.  Petitioner has never articulated a coherent theory of how the informant would have been a material or helpful witness.  The state court's decision withstands scrutiny under AEDPA standards.

III.    *Apprendi* **Error**

Petitioner challenges his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Under *Apprendi* and its progeny, any factual finding (except one regarding previous criminal history) that increases the prescribed range of penalties in a criminal case must be made by a jury and not a judge.  530 U.S. at 490.  In the fourteen years since *Apprendi* was decided, the United States Court of Appeals for the Sixth Circuit has determined that Michigan's indeterminate sentencing scheme does not run afoul of the Sixth Amendment principles enunciated in *Apprendi* and subsequent Supreme Court cases.  *See Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009).  The Michigan Supreme Court has come to the same conclusion.  *People v. Drohan*, 715 N.W.2d 778 (Mich. 2006).  Petitioner frankly admits that the law in the Sixth Circuit is against him.  (Brief at 28-29, docket # 25).  Nevertheless, petitioner asks the court to rely on Supreme Court dissents and on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which petitioner contends undermine the legal basis for *Chontos* and cases like it.

In making this argument, petitioner jettisons AEDPA in favor of free-wheeling legal ingenuity on habeas corpus review.  Petitioner may be right that *Alleyne* casts doubt on the continuing validity of *Chontos*, but on habeas corpus review, the district court is not privileged to make such prognostications concerning the trajectory of the law.  A habeas court may upset a state-court conviction only if the state court's decision was contrary to, or unreasonably applied, "clearly

-41-

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The law to be applied is Supreme Court jurisprudence as it existed "at the time of the state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011); *accord Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014). Therefore, even if the Supreme Court might someday decide that a sentencing system like Michigan's runs afoul of Sixth Amendment guarantees, the Court has not yet done so, and the law at the time of the state-court adjudication did not clearly establish any Sixth Amendment violation. For this reason, the lower courts of this circuit have refused to grant relief on the basis of *Alleyne* to petitioners who were sentenced before that case was decided. *See, e.g., Coggins v. Warren*, No. 13-11753, 2014 WL 1652202, at * 8 (E.D. Mich. Apr. 24, 2014); *Seals v. Rivard*, No. 07-11309, 2014 WL 109749, at * 9 (E.D. Mich. Mar. 18, 2014).

Four years after this case became final on direct review, the Sixth Circuit Court of Appeals reaffirmed its decision in *Chontos*, holding that Michigan's sentencing laws do not violate the *Apprendi* rule. *Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010). A habeas court is not at liberty to ignore binding precedent and to make up new rules of law that did not exist at the time the state courts acted. Novelty alone is a reason requiring rejection of a claim on habeas corpus review. *Primo v. Moore*, 131 S. Ct. 733, 743 (2011); *accord Lafler v. Cooper*, 132 S. Ct. 1376, 1395 (2012).

## IV.     Ineffective Assistance of Appellate Counsel

Petitioner's final claim is that he was denied the effective assistance of counsel on appeal. Petitioner asserts that his attorney was ineffective for not raising on direct appeal the claims presently asserted in the habeas corpus petition. In barely one page of argument, petitioner's present

counsel asserts that there was "no downside" to appellate counsel in challenging the effectiveness of trial counsel, the sufficiency of the evidence to support the plea, the trial court's refusal to compel production of the confidential informant, and the propriety of the sentence. (Brief at 31, docket # 25). Petitioner urges the court to grant habeas relief requiring a new appeal as of right.

Claims of ineffective assistance of appellate counsel are measured under the Strickland standard. *See Evitts v. Lucey*, 469 U.S. 387 (1985). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). To provide effective assistance, counsel need not raise every nonfrivolous claim on direct appeal. *Ballard v. United States*, 400 F.3d 404, 407 (6th Cir. 2005); *Williams v. Bagley*, 380 F.3d 932, 970 (6th Cir. 2004). "'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of competence of appellate counsel in these circumstances, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Minor v. Wilson*, 213 F. App'x. 450, 455 (6th Cir.2007); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Consequently, even if the unasserted claim was not frivolous, "the requisite prejudice cannot be shown if the claim is found to lack merit." *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004).

Petitioner's challenge to the effectiveness of appellate counsel is insubstantial. Petitioner advances an improper standard. The question is not whether there was any "downside" to asserting more claims on appeal. A habeas petitioner is not entitled to a new appeal just because new counsel believes that petitioner had nothing to lose in raising weak arguments. As the Supreme Court noted long ago, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, "far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith*, 477 U.S. at 536. The Supreme Court has never held that the Sixth Amendment requires appellate counsel to advance every nonfrivolous argument imaginable on the off chance that one may stick. Rather, a petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Smith*, 528 U.S. at 288. Petitioner cannot do so in this case. His appellate attorney challenged the trial court's denial of petitioner's motion to withdraw his plea, and challenged the propriety of the sentence. The state Court of Appeals denied leave to review these issues. Two of the claims raised in the habeas corpus petition are essentially variations on the same theme and would have fared no better. The remaining issues lack merit and, in some respects, border on the frivolous. Counsel cannot be faulted for failing to raise weak issues on appeal, even if there was "no downside" in doing so.

Petitioner also falters on the prejudice prong. Because petitioner pleaded guilty, he did not have an appeal as of right, but was required to seek discretionary review. Counsel filed an appropriate application for leave to appeal two issues, which was rejected by the Michigan Court of Appeals. On post-conviction review, appeal was likewise discretionary, and the state courts denied review. Petitioner has advanced no reason to believe that the state courts would have granted leave to appeal the same issues had they been raised in the earlier appeal. The Sixth Circuit has made it

clear that counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the results of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Petitioner has not approached satisfying this demanding standard.

The state-court decision rejecting petitioner's claims of ineffective assistance of appellate counsel was not an unreasonable application of clearly established federal law as determined by the Supreme Court. His Sixth Amendment challenge to the effectiveness of appellate counsel is insubstantial and should be rejected.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied in its entirety on the merits.

Dated:  May 27, 2014             /s/  Joseph G. Scoville
                                 United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).